SUPREME LODGE OF FRATERNAL UNION OF AMERICA v. RAY et al.†
(No. 1257.)

(Court of Civil Appeals of Texas. Texarkana. March 17, 1914. Rehearing Denied April 9, 1914.)

1. EQUITY (§ 3*)—JURISDICTION—GROUNDS—INADEQUACY OF LEGAL REMEDY.

Equity will take jurisdiction, when necessary, to administer a preventive remedy, or when the ordinary courts are made instruments of injustice, or the legal remedy is inadequate to meet the demands of justice.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 7–12; Dec. Dig. § 3.*]

2. EQUITY (§ 46*)—JURISDICTION—ADEQUACY OF LEGAL REMEDY.

A legal remedy is not adequate, so as to prevent equity from taking jurisdiction, unless it is as practical and efficient to secure the administration of justice as is the equitable remedy.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 151, 152, 157, 159–163; Dec. Dig. § 46.*]

3. INJUNCTION (§ 26*)—GROUNDS OF JURISDICTION—MULTIPLICITY OF SUITS.

Equity will enjoin the prosecution of numerous suits at law where all of them arise from a common source, involve similar facts, and are governed by the same legal rules, so that the whole litigation may be settled in a

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes.

† Application for writ of error pending in Supreme Court.

single suit, and it appears that the maintenance cf separate suits will materially injure the parties.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 24–49, 54–61; Dec. Dig. § 26.*]

4. INJUNCTION (§ 26*)—GROUNDS OF JURISDICTION—MULTIPLICITY OF SUITS.

Where separate actions in justice's court by 39 members of a fraternal benefit association were all brought solely to determine the right of the association to put in force an increased rate of assessment, equity will take jurisdiction to restrain the maintenance of the separate actions and to determine the whole matter in one suit.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 24–49, 54–61; Dec. Dig. § 26.*]

5. INJUNCTION (§ 26*)—JURISDICTION—MULTIPLICITY OF SUITS—CONDITIONS PRECEDENT—PAYMENT OF COSTS.

One entitled to maintain a suit in equity to restrain the maintenance of 39 separate actions, brought against it in justice's court, involving the same question, will be required, as a condition to the assumption of jurisdiction by equity, to pay all costs accrued in the justice's court, but defendants may assert such right against complainant in their answer.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 24–49, 54–61; Dec. Dig. § 26.*]

6. INSURANCE (§ 719*)—MUTUAL BENEFIT INSURANCE — INCREASE OF ASSESSMENT — AUTHORITY.

Under the constitution of a fraternal benefit association, providing that if the assessment provided for is inadequate, then "further assessment" should be made as might be necessary to meet the benefits due and payable, the association may require payment of such increased rate of assessment, without restriction to any particular mode, as is necessary to fully meet the benefits due and payable, as by requiring an increased rate payable per month by each member.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1855; Dec. Dig. § 719.*]

Appeal from District Court, Fannin County; Ben H. Denton, Judge.

Suit by the Supreme Lodge of the Fraternal Union of America against David R. Ray and others. From a decree dismissing the petition on demurrer, complainant appeals. Reversed and remanded.

The Fraternal Union of America, incorporated under the laws of Colorado, is a fraternal benefit association, organized and carried on solely for the mutual benefit of its members and their beneficiaries, and has a lodge system and a representative form of government, and makes provision by assessments on its members for the payment of disability and death benefits. Thirty-nine persons, each holding a certificate in the association, instituted separate suits against it in the justice court in Fannin county to recover all the assessments theretofore paid into the association, claiming that the increased rate of assessment on all its members put into force and effect by the association on April 1, 1913, constituted a breach of contract made with each of them in relation to the rate of assessment to be paid monthly by them. Upon the ground that the single question in controversy between the association and the plaintiffs in the numerous suits is that of the authority and power of the association under its constitution and by-laws to make the increased rate of assessment, the instant suit is brought by the Supreme Lodge of the association, having the object and purpose of the exercise of equitable jurisdiction by the district court to prevent the prosecution and defense of a multiplicity of suits by deciding the single and common question of fact and law between the association and all the defendants in a single suit. Attached to the complaint is an exhibit showing the names of the respective plaintiffs and the amount sued for in each suit, and the correctness of the amounts inferentially admitted. There has been no judgment of any kind upon any of the suits. A temporary injunction, restraining the defendants from further prosecuting the suits, as prayed for, was granted. At a regular term of the court a general demurrer was sustained to the petition; and, plaintiff declining to amend, the cause was dismissed. The appeal is made to revise the ruling on the demurrer.

According to the complaint the appellant association has a Supreme Lodge, with power to legislate for and on behalf of its members, consisting of Supreme Lodge officers and delegates elected in accordance with its constitution and by-laws by the subordinate lodges. It appeared that the payment of assessments charged to each beneficial member monthly, or at the rate originally adopted, was wholly insufficient and inadequate to fully meet the benefits accrued and payable from the union to the members and their beneficiaries. And in order and with the view to meet and pay benefits due and payable and legally accruing, the Supreme Lodge, at regular meeting of March, 1913, determined to reasonably increase the rate of assessment, and adopted the rate of assessment based upon the National Fraternal Congress Table, effective on April 1, 1913. The original charter provision of the union confers the power to levy and collect assessments upon its members to raise sufficient funds to pay the benefits accruing to the various members and their beneficiaries, and the regularly adopted constitution of the association provided that certain rates of assessment should be charged to each beneficial member, according to age, payable monthly, and "also provided that in the event the same should be found insufficient or inadequate, then further assessment should be made as might be necessary." The increased rate was no more than sufficient to adequately provide for the payment of the death and disability benefits accrued and payable and actually accruing for payment against the association. The application to become a member constitutes a part of the contract, and in the same the applicant agrees that any benefit certificate issued

should be subject to all constitutional provisions and by-laws then and thereafter adopted by the organization, and the certificates provide upon their face for a full compliance with all of the provisions of the constitution and by-laws then and thereafter adopted. The question of law and of fact, it was averred, was common in all the cases in the justice court between the plaintiffs and the defendant. The prayer, upon final hearing, was that it be decreed that the association have full right and authority to change and raise its rates of assessment, and that the plaintiffs have no cause of action against the association, and that the temporary injunction be made perpetual, and for other and proper equitable relief.

Allen & Webster, of Denver, Colo., Mike E. Smith, L. M. Levy, and Theodore Mack, all of Ft. Worth, for appellant. Cunningham & McMahon, of Bonham, for appellees.

LEVY, J. (after stating the facts as above). According to the allegations of the complaint, 39 persons are prosecuting separate actions in the justice court against appellant, all upon claims of a common origin, and predicated upon the single act of the association in putting into force and effect, on April 1, 1913, an increased rate of assessment, and depending upon the determination of the single question of the authority of the association to make the increased rate. If such suits are prosecuted further in the justice court, the peculiar situation is presented, differing from the ordinary cases, of requiring successive trial and retrial of the same question at the hands of the justice court, with the inconvenience, loss of time, and added expense that would follow. In view of the single issue, and as a means to afford relief against such loss, there is reasonably suggested, as being to the material interest of all the parties, the question of why one final decree between all the parties should not be had through a simplified procedure in consolidation of all the suits and issues into one suit between the parties. But the answer to the question must be, if the justice court retains the power to try the cases, that notwithstanding there is but a single and common issue between all the parties, yet administering relief against such irreparable loss that would probably follow many trials is legally impossible in such forum, because the law has circumscribed its power and does not warrant a consolidation of these suits or issues. It would seem to follow, therefore, that though the justice court has jurisdiction to try the subject-matter of each separate suit, a proper relief in the particular situation here could not legally be afforded in that forum against such irreparable injury that would follow. But if, in view of the single question at issue between all the parties, consolidation of the suits in-

to one suit for final decree be to the material interest of all parties, and the single defendant be entitled, as a clear and positive right, to have administered proper relief against irreparable injury from many successive trials of the same issue, and there is want of an adequate remedy or means for administering such relief in the jurisdiction of the justice court, there is manifestly, as a fundamental proposition, a weakened power in the courts to administer justice if there is to be denied to such party aid from a competent court possessing adequate powers to meet the demands of justice. And it is not believed that, if there be a source or ground appearing of equitable jurisdiction, making a court of equity competent to assume or exercise jurisdiction, the denial of the proper exercise of equitable jurisdiction to such court would be warranted upon the sole fact that the justice court in the first instance is empowered to try each suit separately, without regard to the equitable remedy. There is no provision of law denying the exercise of the equitable jurisdiction when appearing and proper to exercise. And it is not the meaning of the terms of the law that the justice court should hold and retain jurisdiction as against the exercise of equitable jurisdiction in a given suit, where the exercise of equitable jurisdiction is properly demanded, and where the justice court does not possess the adequate powers to meet the demands of justice. It is the meaning of the terms of the law that where there is not the need or warrant for the exercise of equitable jurisdiction by a competent court possessing adequate powers to meet the demands of justice in the proper case, the justice court retains and holds exclusive jurisdiction to try its proper cases.

[1] As a fundamental principle equity takes jurisdiction where it is made necessary to administer a preventive remedy, or when the courts of ordinary jurisdiction are made instruments of injustice, or when the right of action is given by law, but the remedy allowable by the court within its jurisdiction is inadequate to meet the demands of justice. Brown on Jurisdiction, § 196.

[2] The constitution of the state (article 5, § 8) gives the district court express jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided by law or the constitution. And a remedy is not provided at law unless, as laid down in 1 High on Injunctions, § 30, "it is as practical and efficient to secure the ends of justice and its proper and prompt administration as is the remedy in equity." The several decided cases of this state granting injunctive relief against cases instituted in justice court when judgments had been entered have no relation to the precise question here, beyond showing that the exercise of equitable jurisdiction is warranted in the proper case by the district court possessing full powers to grant

the proper relief. And the case of Ry. Co. v. Kuteman, 79 Tex. 465, 14 S. W. 693, was speaking particularly to the particular facts and situation there, and they are quite dissimiliar to the point here. The question of rightful jurisdiction in the district court to hear the complaint is therefore narrowed to the question of whether a court of equity may take jurisdiction to prevent multiplicity of suits, as here involved. We are mindful of the rule that each case should be made to depend upon its own peculiar facts, as carefully outlined in Hale v. Allison, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380, and Ry. Co. v. Woldert Gro. Co., 162 S. W. 1174. The equity suit here must result, in view of a single issue common to all the parties, in a consolidation of all the issues between the parties into one suit for final relief, with convenience and of material interest to all parties, and without injurious results to any of them.

[3] The text-books recognize the general rule to the effect that equity will enjoin the prosecution of numerous suits at law where all arise from some common source, and are governed by the same legal rule and involve similar facts, and the whole matter might be settled in a single suit, and it is apparent that the maintenance of many separate suits will result in loss and be against the material interests of the parties. 1 Pomeroy, Eq. Jur. (3d Ed.) §§ 245–256; 2 Story, Eq. Jur., § 854, and others; 1 High on Injunctions, §§ 12, 62–65.

As said in 2 Story, Eq. Jur., supra, "One class of cases to which this remedial process is properly applied is where there is one general right to be established against a great number of persons; and it may be resorted to either where one person claims or defends a right against many, or where many claim or defend a right against one. In such cases courts of equity interpose in order to prevent a multiplicity of suits; for if each separate party may sue or be sued in a separate action at law and each suit would only decide the particular right in question between the plaintiff and the defendant in that action, litigation might become interminable. Courts of equity, therefore, having a power to bring all the parties before them, will at once proceed to the ascertainment of the general right, and, if it be necessary, they will ascertain it by an action or issue at law, and then make a decree binding upon all parties." And in Pomeroy, supra, sections 255, 269 and 274, it is stated that equitable jurisdiction is properly exercised where individual claims are legally separate, provided there is a community of interest among all the claimants in the question at issue and in the remedy.

In the case of Tribette v. Ry. Co., 70 Miss. 182, 12 South. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642, the text mentioned in Pomeroy, supra, was discussed at length, and pronounced not sound as a fundamental proposition. But the same tribunal, in the later case of

166 S.W.—4

Crawford v. Ry. Co., 83 Miss. 708, 36 South. 82, 102 Am. St. Rep. 476, pronounces as follows: "We think the doctrine announced by Pomeroy is sound, and clearly established by the best considered modern cases."

In the case of Guano Co. v. Saunders, 173 Ala. 347, 56 South. 198, 35 L. R. A. (N. S.) 491, the text is further discussed, and it is there pronounced that "unfortunately, however, the text announced by Mr. Pomeroy has been followed in a great number of adjudicated cases, and probably in the majority of the cases in which the exact proposition involved has been passed upon." See So. Steel Co. v. Hopkins, 174 Ala. 465, 57 South. 11, 40 L. R. A. (N. S.) 464; Ins. Co. v. Distilling Co., 173 Fed. 888, 97 C. C. A. 400, 32 L. R. A. (N. S.) 940; Coal Co. v. Lawson, 43 Ind. App. 226, 87 N. E. 53. The following cases, besides others, have followed and applied the rule: Kellogg v. Siple, 11 App. Div. 458, 42 N. Y. Supp. 379; Pfohl v. Simpson, 74 N. Y. 137; Bank v. Goddard, 131 N. Y. 503, 30 N. E. 566.

In Hamner v. Garrett, 133 S. W. 1058, the Court of Appeals for the Second District said: "It is not to be doubted that in this state in a proper case the district court may issue an injunction to prevent a multiplicity of suits. See Ry. v. Dowe, 70 Tex. 5 [7 S. W. 368]; Realty Co. v. Haller [128 Mo. App. 66], 106 S. W. 589; Piano Co. v. MacMaster [51 Tex. Civ. App. 527], 113 S. W. 337. These are all cases, however, in which the multiplied suits sought to be enjoined had been instituted or were threatened by persons claiming in a single right separate causes of action, arising from the same source."

[4, 5] It is believed that this particular suit under the particular grounds alleged affords reasons for the exercise of equitable jurisdiction by the district court, and we so hold. A part of the equity devolving upon the complainant is, we think, the payment of all the costs accrued in the justice court, but we observe that the defendants herein can avail themselves of this right by claim therefor in the answer.

[6] The next question is the sufficiency of the complaint, as against a demurrer, upon the subject-matter of the alleged power of assessment. The allegation in point is the authority of the association to raise the rate under the following clause of the constitution: "Provided in the event that the same should be found insufficient or inadequate, then further assessment should be made as might be necessary to fully meet the benefits due and payable." Under the term "further assessment," as alleged, there is power in the association, we think, to enforce such increased payment of money by its members, without restriction to any particular mode, as may be necessary to fully meet the benefits due and payable. And the authority is not wanting, in the term, to obtain the needed increase of payment through the means of increased rate payable per month, or, as provid-

ed by the laws, by each member. It is not believed that a further discussion is necessary.

We conclude the court erred in sustaining the general demurrer, and the judgment is reversed, and the cause remanded.